UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Ana Ruth Hernandez-Lara

     v.                                    Civil No. 19-cv-394-LM
                                          Opinion No. 2019 DNH 114
Immigration and Customs
Enforcement, Acting Director


**O R D E R**


Petitioner Ana Ruth Hernandez-Lara is a 33-year-old asylum
seeker from El Salvador.  According to Hernandez, in or about
2013, after receiving death threats from a gang, she fled El
Salvador and came illegally into the United States.  On
September 20, 2018, United States Immigration and Customs
Enforcement (ICE) took Hernandez into custody.  At the time of
her arrest, she was living in Portland Maine with her
significant other.  Hernandez has been in custody since that
date.

Seeking habeas relief under 28 U.S.C. § 2241, Hernandez
requests release or, in the alternative, a new bond hearing
where the burden is placed on the government to prove by clear
and convincing evidence that she is either a danger to the
public or a flight risk.  The government moves to dismiss her
habeas petition, arguing that it does not state a viable legal
claim for relief because Hernandez received a bond hearing and

suffered no due process violation.  On July 23, 2019, the court held a hearing on both the merits of the petition and the motion to dismiss.  For the reasons that follow, the court denies the motion to dismiss and grants Hernandez's petition to the extent it requests a new bond hearing.

**Jurisdiction**

Hernandez files this writ of habeas corpus seeking relief pursuant to 28 U.S.C. § 2241, alleging that she is being held "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Hernandez is currently detained at the Strafford County House of Corrections, a facility within this court's jurisdiction, and she asserts her detention violates due process.

Federal courts have habeas jurisdiction to review a constitutional challenge to the immigration bail system that is unrelated to a final order of removal.  See Jennings v. Rodriguez, 138 S. Ct. 830, 841 (2018) (holding that challenges to the "extent of the Government's detention authority" are not precluded by 8 U.S.C. § 1226(e)); Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (holding that jurisdiction-stripping provisions of 8 U.S.C. §§ 1252 & 1226 bar federal courts from hearing cases challenging government's discretionary decisions — but do not bar constitutional challenges to the procedures themselves);

Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that constitutional challenges to the immigration bail system are cognizable in federal court); Figueroa v. McDonald, ___ F. Supp. 3d ___, ___, 2018 WL 2209217, at *2-3 (D. Mass. 2018) (holding that federal court has jurisdiction to hear constitutional challenge to immigration bail procedures—such as allocation of burden of proof—which is not a challenge to the immigration judge's discretionary decision); see also Saint Fort v. Ashcroft, 329 F.3d 191, 200 (1st Cir. 2003) (noting that the jurisdiction-limiting provision in § 1226(e) applies only to review of the government's discretionary judgment).

Hernandez's petition challenges the constitutionality of the immigration bail system; she is not asking the court to review the discretionary judgment exercised by the immigration judge in her case. Thus, this court has jurisdiction over Hernandez's claims.

**The Bond Hearing**

The parties do not dispute the material facts. Approximately one month after being taken into custody, Hernandez had a bond hearing before an immigration iudge ("IJ"). See doc. no. 1-1. The IJ placed the burden of proof on her to prove by clear and convincing evidence that she was neither a danger nor a flight risk. Id. at 10. Hernandez put on evidence

that she had neither a criminal record nor any history of arrests. She also put on evidence of her good moral character, and her ties to Portland Maine, the community in which she was living. The IJ ruled that Hernandez was a danger based on a Red Notice from Interpol, issued by El Salvador, that accused Hernandez—incorrectly, according to Hernandez—of being a gang member. Hernandez explained to the IJ that the Red Notice allegation was false, and that it was her brother who was a member of the gang. Even the IJ expressed concern about the Red Notice during the bond hearing:

> I don't see that there is sufficient evidence explaining why these allegations are being brought against her. She claims that they're street gangs, but it looks like I don't know if that's because this is an inter-rival thing or she was an innocent member or somehow wrongly identified. I just don't have the evidence. What I do have is the Interpol Red Notice. As it is the Respondent's burden of proof to show by clear and convincing evidence she is not a danger, I find, based on this Red Notice, she has failed to meet that burden . . . .

Doc. no. 1-1 at 9-10. The IJ found Hernandez had not sufficiently refuted the Red Notice and that she was a danger. He ordered that Hernandez be detained pending the completion of her removal proceedings. Id.

Hernandez has applied for asylum and for protections under the Convention Against Torture. The IJ denied both requests. Hernandez has appealed the IJ's decision and her appeal is currently pending before the Board of Immigration Appeals (BIA).

4

On June 13, 2019, the First Circuit granted her request to stay her removal during the pendency of her petition for review of the decision of the BIA.  See doc. no. 15.  As of the date of this Order, Hernandez has been detained for over 10 months.

**The Legal Standard**

Hernandez was arrested pursuant to 8 U.S.C. § 1226(a), which allows for ICE agents to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States."  Because Hernandez is not a criminal alien, the government has the discretion to release her on bond.  See 8 U.S.C. § 1226(a)(2).  After ICE makes the initial decision to detain an alien, the alien has the right to request a bond hearing to seek release pending final removal proceedings. 8 C.F.R. § 236.1(d)(1).  But § 1226 is silent on the question of which party bears the burden of proof at that hearing.  See 8 U.S.C. § 1226(a).

Although the statute is silent on burden of proof, the BIA has consistently held that the alien carries the burden of proving to the satisfaction of the IJ that he "merits release on bond."  Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006).  Specifically, the BIA has held that the alien "must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings." Adeniji, 22

I. & N. Dec. 1102, 1116 (BIA 1999); see also Figueroa, 2018 WL 2209217, at *3 n.1 (noting the source for the standard comes from a regulation—8 C.F.R. § 236.1(c)(8)—regarding the authority of ICE agents to issue arrest warrants).

In Jennings, the Supreme Court recently addressed the procedures required in a bond hearing under § 1226(a). See Jennings, 138 S. Ct. at 847-48. Although the Court held that the statute does not mandate that the government meet a clear and convincing evidence standard in § 1226(a) bond hearings, it left open the question whether the Due Process Clause places such a burden on the government at these hearings. Id. at 851. This is the question raised by Hernandez's habeas petition.

Neither the Supreme Court nor the First Circuit has decided this precise question. However, the Ninth Circuit has squarely ruled that due process requires that the government bear the burden at a § 1226(a) bond hearing of justifying detention by clear and convincing evidence. See Singh, 638 F.3d at 1203-06.[1]

_____

[1] The government points to a Third Circuit case as having held, contrary to Singh, that there is no due process right to a § 1226(a) bond hearing where the government has the burden to prove detention by clear and convincing evidence. Borbot v. Warden Hudson Cty. Corr. Fac., 906 F.3d 274, 276-78 (3d Cir. 2018). The government urges the court to follow Borbot and deny Hernandez's petition. The court does not read Borbot as deciding against a petitioner in this situation. In Borbot, the court ruled that where a petitioner alleges no constitutional violation in his initial bond hearing under § 1226(a), but instead argues for habeas relief on the basis of his prolonged detention following the initial hearing, there is no

In this circuit, Chief Judge Saris in the District of
Massachusetts has held in two cases that due process requires
the government to bear the burden of proof at a bond hearing
under § 1226(a), but not necessarily by clear and convincing
evidence. Pensamiento v. McDonald, 315 F. Supp. 3d 684, 692-93
(D. Mass. 2018); Figueroa, 2018 WL 2209217, at *6. Rather,
Judge Saris has held that due process requires the government to
bear the burden of proving "'to the satisfaction of the IJ'"
that the alien is either dangerous or a flight risk.
Pensamiento, 315 F. Supp. 3d at 693 (quoting Guerra, 24 I. & N.
at 40); Figueroa, 2018 WL 2209217, at *6 (same). Chief Judge
Saris has recently reaffirmed these holdings in Doe v. Tompkins,
No. 18-12266-PBS, 2019 U.S. Dist. LEXIS 22616, at *2 (D. Mass.
Feb. 12, 2019) and Diaz Ortiz v. Tompkins, No. 18-12600-PBS,
2019 U.S. Dist. LEXIS 14155, at *2 (D. Mass. Jan. 27, 2019).

Chief Judge Saris's decisions placing the burden of proof
on the government rather than the noncriminal alien under
§ 1226(a) are in accord with every other district court that has
addressed this precise question. See Aparicio-Larin v. Barr,
No. 6:19-cv-06293-MAT, 2019 WL 3252915, at *6 (W.D.N.Y. July 20,

constitutional requirement for a second bond hearing. Id. at
277-79. Unlike the petitioner in Borbot, Hernandez alleges that
she suffered a constitutional violation at her initial § 1226(a)
bond hearing. Borbot is therefore not on point, and the court
does not rely on it.

2019); Nzemba v. Barr, No. 6:19-CV-06299-MAT, 2019 WL 3219317, at *6 (W.D.N.Y. July 17, 2019); Diaz-Ceja v. McAleenan, No. 19-cv-00824-NYW, 2019 WL 2774211, at *10 (D. Colo. July 2, 2019); Velasco Lopez v. Decker, 19-cv-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019); Darko v. Sessions, 342 F. Supp. 3d 429, 435-36 (S.D.N.Y. 2018); Martinez v. Decker, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *4-5 (S.D.N.Y. Oct. 17, 2018). But see Maldonado-Velasquez v. Moniz, 274 F. Supp. 3d 11, 13-15 (D. Mass. 2017) (casting doubt in dicta on the argument that due process is violated by BIA's placement of burden of proof on the alien).

In addition to the Ninth Circuit's holding in Singh, the overwhelming majority of district courts have gone further than Chief Judge Saris and held that, in bond hearings under § 1226(a), due process requires the government to bear the burden of justifying detention by clear and convincing evidence. See Aparicio-Larin, 2019 WL 3252915, at *6; Nzemba, 2019 WL 3219317, at *7; Velasco Lopez, 2019 WL 2655806, at *3; Darko, 342 F. Supp. 3d at 435-36; Martinez, 2018 WL 5023946, at *5. Borrowing from the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., a magistrate judge in the District of Colorado has held that the burden at a § 1226(a) bond hearing is on the government to prove flight by a preponderance and dangerousness by clear and convincing evidence. Diaz-Ceja, 2019 WL 2774211, at *11.

Notably, even in cases where the alien's detention is mandatory pursuant to § 1226(c), an overwhelming majority of district courts have held that prolonged detention warrants a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the alien is either dangerous or a flight risk.  See Valerio v. Barr, 19-CV-519, 2019 U.S. Dist. LEXIS 114686, at *14-19 (W.D.N.Y. July 10, 2019); Joseph v. Barr, No. 18-CV-2640 (RA), 2018 WL 6075067, at *12-13 (S.D.N.Y. Nov. 21, 2018); Dukuray v. Decker, No. 18-CV-2890 (VB), 2018 WL 5292130, at *3-5 (S.D.N.Y. Oct. 25, 2018); Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *11-12 (S.D.N.Y. July 25, 2018); Portillo v. Hott, 322 F. Supp. 3d 698, 708-09 (E.D. Va. 2018); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018); cf. Frantz C. v. Shanahan, No. 18-2043 (JLL), 2018 WL 3302998, at *3 (D.N.J. July 5, 2018) (denying habeas relief where record showed petitioner had received a bond hearing where IJ placed burden on government to justify detention by clear and convincing evidence).  But see Reid v. Donelan, 22 F. Supp. 3d 84, 88-89, 92-93 (D. Mass. 2014), (rejecting argument that government should bear the burden by clear and convincing evidence) overruled on other grounds by Reid v. Donelan, 819 F.3d 486, 498-99 (1st Cir. 2016).  As one court has explained, "[i]t would be both illogical and legally unsound to afford greater

procedural protections to aliens detained under Section 1226(c) than to aliens detained under Section 1226(a)." Martinez, 2018 WL 5023946, at *4 (internal quotation marks omitted).

This court finds persuasive those opinions that have held that, in § 1226(a) cases, due process requires the burden be placed on the government. See Singh, 638 F.3d at 1203-06; Pensamiento, 315 F. Supp. 3d at 692-93; Figueroa, 2018 WL 2209217, at *6; Darko, 342 F. Supp. 3d at 435-36; Martinez, 2018 WL 5023946, at *4-5. The question remaining is whether the government's burden is, as Chief Judge Saris has found, merely the same as that the BIA places on the alien, or, as the vast majority of other courts have held, proof by clear and convincing evidence.

The court's analysis of this question is guided by the following principles. First, the Supreme Court has repeatedly reaffirmed the bedrock principle that "due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake are both particularly important and more substantial than loss of money." Cooper v. Oklahoma, 517 U.S. 348, 363 (1996) (internal quotation marks and ellipses omitted); see also Foucha v. Louisiana, 504 U.S. 71, 80-82 (1992) (striking down insanity-related detention system that placed burden on detainee to prove dangerousness and placing burden on state to justify civil commitment by clear and

convincing evidence because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"); Santosky v. Kramer, 455 U.S. 745, 768-69 (1982) (holding that clear and convincing evidence standard appropriate for termination of parental rights); Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 285-86 (1966) (requiring "clear, unequivocal, and convincing" evidence to prove deportability); Chaunt v. United States, 364 U.S. 350, 353 (1960) (requiring "clear, unequivocal, and convincing" evidence to set aside a naturalization decree).

A second bedrock principle at issue here is that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979) (requiring state to meet clear and convincing evidence standard in involuntary commitment proceedings) (emphasis added). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Third, these bedrock principles apply to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id.; see also Reno v. Flores, 507 U.S. 292, 306 (1993) ("[T]he

Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

In this case, the proceedings at issue are civil, not criminal. To ensure that adequate procedural protections satisfying due process are applied, the court must weigh the individual's interest in avoiding physical restraint against the government's justification for the physical restraint. See Zadvydas, 533 U.S. at 693; Addington, 441 U.S. at 425. In weighing these interests, the law aims to "minimize the risk of erroneous decisions." Addington, 441 U.S. at 425 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

The Court's decision in Addington is particularly instructive. At issue in Addington was the appropriate burden of proof where the state is seeking to commit a person involuntarily for an indefinite period to a state mental hospital. Id. at 420. While the Court held that proof beyond a reasonable doubt was not required, it reasoned that the burden should be heavier than in a civil case, i.e., preponderance of the evidence, which typically involves merely "a monetary dispute between private parties." Id. at 423. Ultimately, the Court in Addington held that the state must meet a clear and convincing standard when attempting to commit a person involuntarily. Id. at 433.

As the Addington Court explained, the determination of burden of proof in particular kinds of cases depends on the appropriate allocation of the risk of error.  Id. at 423-24. Where money is changing hands in a typical civil case, the law permits a burden of proof that requires the parties to share equally in the risk of error.  Id. at 423.  On the other hand, in a criminal case, the liberty interests of the defendant are of "such magnitude" that the law "imposes almost the entire risk of error" upon the government.  Id. at 423-24.  The Court explained that the intermediate standard, i.e., "some combination of the words 'clear,' 'cogent,' 'unequivocal,' and 'convincing,'" id. at 424, was appropriate where the "interests at stake . . . are deemed to be more substantial than mere loss of money."  Id.; see also, Cooper, 517 U.S. at 363 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." (internal quotation marks omitted)).

In cases such as this where an alien has no criminal record and is therefore not subject to mandatory detention under § 1226(c), the immigration laws permit that alien a bond hearing pending final deportation proceedings.  The government's interests at such a hearing are weighty: to ensure the appearance of aliens at future immigration proceedings and to

prevent danger to the community.  To properly allocate the
burden of proof at a § 1226(a) hearing, the court must weigh the
government's interests at such a hearing against the significant
liberty interest of the noncriminal at that hearing.  Addington
teaches that the court then determines the appropriate burden of
proof by assessing allocation of risk in that context.
Addington, 441 U.S. at 425.

     A bail hearing under § 1226(a) involves more than a mere
exchange of money; thus, the burden should not be shared equally
by the alien and the government.  See Addington, 441 U.S. at
423-24.  Placing the burden of proof on the government at a
§ 1226(a) hearing to show by clear and convincing evidence that
the noncriminal alien should be detained pending completion of
deportation proceedings is more faithful to Addington and other
civil commitment cases, such as Foucha, 504 U.S. at 80 (placing
burden of proving necessity of civil commitment following
successful insanity defense on the state by clear and convincing
evidence). As explained by the Ninth Circuit: "Because it is
improper to ask the individual to 'share equally with society
the risk of error when the possible injury to the individual' —
deprivation of liberty — is so significant, a clear and
convincing standard of proof provides the appropriate level of
procedural protection."  Singh, 638 F.3d at 1203-04 (quoting
Addington, 441 U.S. at 427).

Relying on Demore v. Kim, 538 U.S. 510 (2003), the government argues that Addington and other civil commitment cases are not controlling in the immigration context because "in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." Doc. no. 16 at 3 (quoting Demore, 538 U.S. at 522). The court does not agree that Demore renders Addington inapplicable.

In Demore, the Court considered whether § 1226(c), which imposes mandatory detention on criminal aliens during removal proceedings, violates the Due Process Clause. 538 U.S. at 513-14. The Court acknowledged in Demore that, in exercising its broad immigration powers, Congress may make rules "that would be unacceptable if applied to citizens." Id. at 521 (internal quotation marks omitted). And it recognized its prior rulings holding that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." Id. at 523.

As other courts have noted, however, Demore has only limited relevance to the challenge at issue here. See Martinez, 2018 WL 5023946, at *4; Pensamiento, 315 F. Supp. 3d at 692. Demore involved a class of criminal aliens for which Congress has determined that mandatory detention, with very limited opportunities for bail, is necessary and reasonable. 538 U.S.

at 518-20; see 8 U.S.C § 1226(c).  By contrast, under § 1226(a), detention of noncriminal aliens pending removal proceedings is discretionary, not mandatory.  See 8 U.S.C. § 1226(a).  As noted above, the Supreme Court has not spoken on what process is due under this statute.

Additionally, although the Demore Court stated that aliens may be subject to "rules" that would be unacceptable if applied to citizens, it did not explicitly state that aliens have any less interest in freedom from physical restraint than do citizens.  Thus, that decision does not undermine the bedrock principles discussed above: that the Due Process Clause applies to all persons, even unlawful aliens, Zadvydas, 533 U.S. at 693, and that the Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," Addington, 441 U.S. at 425 (emphasis added); see also Singh, 638 F.3d at 1204 (rejecting government's argument that court should apply preponderance standard because the purpose for detaining noncriminal aliens is different from other civil commitments).

The government also argues that Addington is inapposite here because it involved indefinite confinement, whereas § 1226 proceedings have a definite endpoint—the conclusion of removal proceedings.  Doc. no. 16 at 4.  In Demore, the Court distinguished between the liberty interests at stake in

proceedings that could result in virtually indefinite commitment and those that involve a shorter, more definite term of detention.  Demore, 538 U.S. at 528-29.  Central to the Court's holding that § 1226(c) withstands due process scrutiny was the fact that § 1226(c) detentions typically span only a "brief period."  Id. at 513, 529-30.  The Court observed that detentions under § 1226(c) "last roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases in which the alien chooses to appeal."  Id. at 530.  It contrasted this definite and brief term of detention under § 1226(c) with the "indefinite" and "potentially permanent" periods of detention at issue in Zadvydas that led the Court in that case to interpret the post-removal statute as including an implicit time-limitation on detention.  See id. at 529-30.

Recently, several courts have recognized that "[t]he country has seen a dramatic increase in the average length of detention since Demore."  Hernandez, 2018 WL 3579108, at *11; Diaz-Ceja, 2019 WL 2774211, at *10.  In fact, the average time aliens spend in detention during the pendency of removal proceedings has increased by at least ten-fold.  Compare Demore, 538 U.S. at 529 (relying on statistics showing that removal proceedings are completed in an average of 47 days), with Sopo v. U.S. Attorney General, 825 F. 3d 1199, 1213 (11th Cir. 2016)

(citing statistics reporting that, in 2012, "the average amount of time an alien with a criminal conviction spent in removal proceedings (and likely in detention) was 455 days"), vacated on other grounds 890 F.3d 952 (11th Cir. 2018). Hernandez provides a case in point: she has been detained for over 10 months (over 300 days).

As the length of average detention under § 1226 grows, so too do the aliens' liberty interests. See Hernandez, 2018 WL 3579108, at *11; Diaz-Ceja, 2019 WL 2774211, at *10. The court recognizes that, because indefinite detention is not at issue here, the liberty interest at stake is something less than that at issue in Addington, Foucha, and Zadvydas. But the liberty interest at stake here is certainly something more than that conceived of by the Court in Demore based upon its assumption that detention under § 1226 lasts only for a "brief period." Although detention under § 1226 still has a definite endpoint (removal), its duration "is not strictly limited in any sense of the word." Diaz-Ceja, 2019 WL 2774211, at *10. Thus, the court is not persuaded that its reliance on Addington is misplaced.[2]

_____

[2] The government also argues that detention under § 1226 differs from the indefinite civil commitment in Addington in that "an alien detained under section 1226(a) can unilaterally decide to end his detention by conceding removal." Doc. no. 16 at 4. The court is not persuaded. As the Ninth Circuit explained, accepting the government's position would place aliens in the position of choosing between remaining in detention – likely for a lengthy term – or leaving the country

The court finds persuasive the reasoning of the majority of courts that have considered this issue and held that due process requires the government to shoulder the burden of justifying detention by clear and convincing evidence.  See Singh, 638 F.3d at 1205; Nzemba, 2019 WL 3219317, at *6; Velasco Lopez, 2019 WL 2655806, at *3; Darko, 342 F. Supp. 3d at 435-36; Martinez, 2018 WL 5023946, at *4-5.  Accordingly, the court holds that, in a § 1226(a) bond hearing, due process requires that the government bear the burden of justifying detention by clear and convincing evidence.

Because Hernandez bore the burden at her § 1226(a) bond hearing of proving she was neither a flight risk nor a danger, Hernandez's due process rights were violated.  And, it is beyond dispute that Hernandez suffered prejudice from this constitutional deprivation.  The record makes clear that this was a close case for the IJ and that, had the government borne the burden of proving danger, the IJ may well have found the evidence deficient.[3]  See Singh, 638 F.3d at 1205 (holding that

---

and abandoning their challenge to removability even though they may have a meritorious claim.  See Singh, 638 F.3d at 1204.  The existence of this unenviable choice does not justify placing a lower burden of proof on the government.

[3] Indeed, in this case, the IJ required Hernandez to prove her case by clear and convincing evidence.

error was prejudicial where evidence before IJ "was by no means overwhelming, so the standard of proof could well have affected the outcome of the bond hearing"). Accordingly, within ten days from the date of this Order, the government shall bring Hernandez before an IJ for a new § 1226(a) bond hearing where the government shall bear the burden of justifying Hernandez's detention by clear and convincing evidence.[4]

**Conclusion**

In conclusion, the court denies the government's motion to dismiss (doc. no. 9) and grants Hernandez's petition for habeas relief (doc. no. 1) to the extent it requests a new bond hearing. To the extent Hernandez's petition requests additional relief, it is denied.[5] Such bond hearing shall occur within 10 days of the date of this Order and the burden at that hearing to justify Hernandez's detention is on the government. The

---

[4] Because the court rules in favor of Hernandez on the due process question involving the burden of proof at § 1226(a) hearings, the court does not reach her prolonged detention argument.

[5] Hernandez requests an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504. To the extent Hernandez wishes to pursue this request, she shall file further briefing in support of that request within 30 days of the date of this order. The government will then have 14 days in which to object.

standard the government must meet at that hearing is proof by clear and convincing evidence.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 25, 2019

cc:  Counsel of Record